**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

AMANDA HEMMER,

Plaintiff,

v. Case No. C-1-04-676

OFFICER JOHN VAUGHN,

Defendant.

**ORDER**

This matter is before the Court upon defendant's Motion for Summary Judgment based on qualified immunity (doc. 15) and plaintiff's opposing memorandum (doc. 16).

**I. Procedural history/factual background**

This case arises out of an incident in which defendant Cincinnati Police Officer John Vaughn allegedly picked up and violently threw plaintiff Amanda Hemmer to the pavement outside of a night club, causing injury to her shoulder, and then detained plaintiff and coerced her to apologize in order to cover up his actions and avoid being held accountable. Plaintiff brings claims against defendant for violation of her right under the Fourth Amendment to the United States Constitution to be free from excessive and unnecessary force (First Cause of Action) and violation of her rights under the Due Process Clause of the Fourteenth Amendment stemming from defendant's purported attempt to cover up the alleged assault (Second Cause of Action). Defendant has filed an answer in which he asserts a counterclaim for defamation.

**II. Facts**

Defendant has not filed proposed findings of fact and conclusions of law in support of his summary judgment motion as required by the Court's Order of December 21, 2004 (doc. 9). The Court has therefore reviewed each party's factual allegations as set forth in their respective briefs to determine whether there is a genuine issue of material fact that precludes summary judgment.

Defendant's version of the events giving rise to this lawsuit is as follows. On May 26, 2004, and in the early morning hours of May 27, 2004, defendant was working a Cincinnati police detail for the Red Cheetah, a bar at Main and Sycamore Streets in Cincinnati. Plaintiff left the bar at approximately 1:30 on the morning of the 27th. Plaintiff approached defendant from a position where he could not see her. She placed her hand on defendant's shoulder/chest while he was involved in a discussion with two other females outside the bar, and he instinctively pushed her hand away, as a result of which she ended up on the ground. Officer Frank McGraw, who was likewise working a Cincinnati police detail for the bar, saw a crowd gathering and went toward the entrance of the bar, where he spoke with plaintiff and defendant. Officer McGraw learned of defendant's intent to file charges against plaintiff for assault on a police officer based on the fact that she had put her hand on defendant while he was trying to break up a fight between some females. Plaintiff told Officer McGraw that defendant had pushed her down. Officer McGraw offered to call for medical treatment for plaintiff, but she declined. Plaintiff spoke with her father on her cell phone, as did Officer McGraw. Officer McGraw then discussed with plaintiff the possibility that there had been a misunderstanding and that plaintiff could apologize to defendant. Officer McGraw also informed plaintiff's father of this proposed disposition. Defendant notes that plaintiff testified at her deposition that she apologized to defendant and then went on her way. According to defendant, there "was no custodial or non-custodial detention, no handcuffing, no placing of Hemmer in the

back of a patrol car, no formal constitutional warnings consistent with arrest, no investigative stop or detention, no seizure, and, no arrest," and there was no physical contact between plaintiff and defendant following the initial incident. Plaintiff went to the hospital the next day, claiming that she had hurt her shoulder and neck.

Plaintiff has provided a different version of the incident. She makes the following allegations: On the morning of May 27, 2004, plaintiff, a pre-med student at Xavier University, and three of her friends were at the Red Cheetah, having arrived there around midnight. Plaintiff was the designated driver and she did not drink any alcohol before going to the bar or while at the bar. When plaintiff and a friend left the club, they saw their two other friends conversing with defendant. Plaintiff approached defendant from the side, tapped him on the shoulder, and said, "Excuse me." She asked her friend if they could please go. At that point, defendant pushed one of the young women to the pavement. He then turned, grabbed plaintiff by the shoulders, and threw plaintiff to the ground. Officer McGraw sought to assist plaintiff and asked her if she wanted to go to the hospital, but plaintiff said that she did not. Plaintiff asked defendant for his badge number, and defendant responded that she had hit him and he was going to take her to jail for assaulting a police officer, which entailed a six month jail sentence. Plaintiff called her father, a lawyer, on her cell phone for advice, and he advised plaintiff to tell the officer whatever was necessary in order to get herself home. Defendant demanded an apology and a promise that plaintiff would not take the incident any farther. Plaintiff told defendant that she did not think that she had hit him, but she was sorry if she had. Plaintiff was then allowed to leave, and she went on her way.

**III. Motion for summary judgment**

Defendant moves for summary judgment on the ground that he is entitled to qualified immunity from liability on plaintiff's claims. Defendant argues that the Fourth Amendment is not implicated in this case because at the time of the alleged use of force, there was no search or seizure of plaintiff. Defendant further alleges that plaintiff's Fourth Amendment rights were not clearly established under the particular facts of this case because, at best, defendant's conduct fell in the "hazy border between excessive force and unacceptable force. . ." In support of his position, defendant refers the Court to the decision in ***Darrah v. City of Oak Park.*** 255 F.3d 301 (6th Cir. 2001). Defendant contends that ***Darrah*** is factually close to this case and demonstrates that plaintiff has no clearly established right under the circumstances of this case.

Defendant goes on to argue that because there was no search or seizure, the Fourteenth Amendment substantive due process standard of "shocks the conscience" applies. Defendant contends that plaintiff cannot meet that standard in this case.

As to plaintiff's second cause of action, defendant alleges that assuming plaintiff is claiming a deprivation of a liberty right under the substantive due process clause, there can be no Fourteenth Amendment violation. Defendant claims that plaintiff cannot show "an abuse of executive power so clearly unjustified by any legitimate objective of law enforcement as to be barred by the Fourteenth Amendment."

## IV. Applicable law

### A. Summary judgment standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby***, 477 U.S. 242, 248 (1986) (quoting ***First Nat'l Bank of Arizona v. Cities Serv. Co.***, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. ***Anderson***, 477 U.S. at 255 (citing ***Adickes v. S.H. Kress & Co.***, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. ***Anderson***, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. ***Id.*** at 249 (citing ***Cities Serv.***, 391 U.S. at 288-289). If the evidence is merely colorable, ***Dombrowski v. Eastland,*** 387 U.S. 82, 84 (1967), or is not significantly probative, ***Cities Serv.***, 391 U.S. at 290, judgment may be granted. ***Anderson***, 477 U.S. at 249.

**B. Qualified immunity**

Government officials performing discretionary functions are generally immune from liability for civil damages so long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. ***Harlow v. Fitzgerald,*** 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). Whether a defendant is entitled to qualified immunity is a question to be resolved at the earliest possible stage of the litigation. ***Saucier v. Katz,*** 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). Resolving the issue requires a three-part analysis: (1) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred"; (2) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" ***Feathers v. Aey,*** 319 F.3d 843, 848 (6th Cir. 2003) (citations omitted); ***Sample v. Bailey,*** 209 F.3d 689, 695-96 (6th Cir. 2005).

**C. Excessive force claims**

Excessive force claims are often appropriately analyzed under the Fourth Amendment, which protects individuals against unreasonable seizures. ***Darrah,*** 255 F.3d at 305-06 (citing ***Graham v. Connor,*** 490 U.S. 386, 394, 109 S.Ct. 1865 (1989)). The Fourth Amendment prohibition against unreasonable seizures does not apply, however, when the plaintiff has not been purposefully seized by law enforcement officials. ***Id.*** (citing ***County of Sacramento v. Lewis,*** 523 U.S. 833, 843-44, 118 S.Ct. 1708 (1998)); ***Scott v. Clay County, Tennessee,*** 205 F.3d 867, 876 n. 13 (6th Cir. 2000). Rather, an excessive force claim where there has been no search or seizure is properly analyzed under the substantive component of the due process clause of the Fourteenth Amendment, which

prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." ***Darrah,*** 255 F.3d at 305-06.

Simple negligence does not rise to the level of a substantive due process violation. ***Sperle v. Michigan Dept. of Corrections,*** 297 F.3d 483, 491 (6th Cir. 2002) (citing ***Ewolski v. City of Brunswick,*** 287 F.3d 492, 510 (6th Cir. 2002)). Rather, "the Fourteenth Amendment protects only against abuse of executive power which 'shocks the conscience.'" ***Id.*** (citing ***Ewolski,*** 287 F.3d at 510) (quoting ***Lewis,*** 523 U.S. at 846).

The Court in ***Scott*** explained when an excessive force claim is properly analyzed under the Fourteenth Amendment as opposed to the Fourth Amendment:

> Constitutional tort claims against state actors undergirded by allegations of excessive force exerted to consummate a person's seizure are properly assessed under Fourteenth Amendment due process guarantees if the plaintiff had been a non-targeted innocent third party collaterally injured by an assertion of official force; in such instances, the defendant will be liable only if he or she had acted in a manner which 'shocks the conscience.' ***Lewis,*** 523 U.S. 833, 118 S.Ct. at 1714-21; ***Claybrook v. Birchwell,*** 199 F.3d 350, 359 (6th Cir. 2000). By contrast, an excessive force claim asserted against public servants by a *premeditated target* of official compulsion designed to consummate a seizure are analyzed under Fourth Amendment 'reasonableness' strictures; the plaintiff need prove only that the faulted official action was, under the implicated circumstances, objectively 'unreasonable.' ***Graham,*** 490 U.S. at 394-97, 109 S.Ct. 1865; ***Tennessee v. Garner,*** 471 U.S. 1, 7-9, 105 S.Ct. 1694 (1985); ***Claybrook,*** 199 F.3d at 359.

***Scott,*** 205 F.3d at 875-76.

The Sixth Circuit in ***Darrah*** analyzed an excessive force claim under both the Fourteenth and Fourth Amendments. In that case, a police officer struck a protester who had grabbed him from behind while the officer was trying to arrest another protester during a demonstration. The Court found it unnecessary to determine whether a seizure had occurred because the officer's actions did

not satisfy either the Fourteenth Amendment "shocks the conscience" test or the Fourth Amendment "objective reasonableness" test. With respect to the Fourteenth Amendment test, the Court noted that

> Unlike those instances where the government actor has the time to deliberate various alternatives before acting, this case is precisely one of those 'rapidly evolving, fluid, and dangerous predicament[s] which precludes the luxury of calm and reflective pre-response deliberation[.]' ***Claybrook,*** 199 F.3d at 359. Officer Bragg, when grabbed from behind in a loud and unruly crowd of people, did not have time to deliberate the best possible course of action. Just the opposite is the case. In these instances, the Court has stated that the government actor's conduct shocks the conscience only if the force was applied 'maliciously and sadistically for the very purpose of causing harm.' ***Lewis,*** 523 U.S. at 853, 118 S.Ct. 1708 (quotations omitted). Given the facts of this case, the plaintiff simply cannot show that any reasonable jury could find that Officer Bragg's conduct was malicious, sadistic, and imposed not to restore order, but only to cause harm.

***Id.*** at 306-07.

## V. Opinion

Defendant has not shown that he is entitled to qualified immunity from liability on plaintiff's excessive force claim. Accepting plaintiff's version of the facts as true for summary judgment purposes, and assuming defendant's conduct did not constitute a seizure of plaintiff, plaintiff has shown that there is a genuine issue of material fact as to whether defendant's use of force violated her Fourteenth Amendment rights. That is, a reasonable jury could determine that defendant grabbed plaintiff and threw her to the ground for the purpose of harming her, rather than in an effort to restore order, and that such action "shocks the conscience." In addition, the Court finds that the right to not be subjected to force under the circumstances alleged by plaintiff was clearly established on the date of the incident and that a reasonable officer in defendant's position would have known of that clearly established constitutional right. Finally, plaintiff has offered sufficient evidence to indicate that defendant's conduct was objectively unreasonably in light of her clearly established

constitutional rights. Accordingly, defendant is not entitled to summary judgment on plaintiff's first claim for relief.

Defendant is entitled to summary judgment on plaintiff's claim that defendant violated her Fourteenth Amendment rights by coercing an apology from her for allegedly hitting him. The facts viewed in the light most favorable to plaintiff do not permit a finding that defendant's conduct in this regard "shocks the conscience." Thus, defendant is immune from liability on plaintiff's second claim for relief.

## VI. Conclusion

Defendant's motion for summary judgment (doc. 15) is **GRANTED** as to plaintiff's second cause of action, and that claim is dismissed. The motion is **DENIED** with respect to plaintiff's first cause of action. The case will proceed to trial on that claim in accordance with the schedule established by the Court.

**IT IS SO ORDERED.**

S/ Herman J. Weber
HERMAN J. WEBER
SENIOR JUDGE, UNITED STATES DISTRICT COURT

J:\HJWA\04-676excforcePUB.wpd